UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TROY D. BIGWARFE,

                            Plaintiff,

        -against-                                                      7:06-CV-1397
                                                                       (LEK/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

## DECISION AND ORDER

## I.        BACKGROUND

### A.        Procedural History

Plaintiff Troy D. Bigwarfe ("Plaintiff") filed an application for Disability Insurance Benefits

("DIB") on November 7, 2003.  Administrative Transcript ("AT") 91.  The application was denied

initially.  AT 31.  A request was made for a hearing.  AT 36.  Hearings were held before

Administrative Law Judge ("ALJ") Franklin T. Russell on July 11, 2005 and November 14, 2005.

AT 330-70.  A hearing also was held before ALJ Elizabeth Koennecke on March 15, 2006.  AT

371-93.  In a decision dated June 7, 2006, ALJ Koennecke found that Plaintiff was not disabled

from October 10, 2003 through June 7, 2006.[1]  AT 11-20.  The Appeals Council denied Plaintiff's

request for review on September 15, 2006.  AT 6-9.  Plaintiff commenced this action on November

17, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision.  Dkt.

No. 1.

### B.        Contentions

Plaintiff makes the following claims:

(1) The Commissioner failed to properly evaluate the medical opinions of record.  Dkt. No. 6

---

[1]  Plaintiff was previously awarded benefits beginning March 23, 2000 and ending May 1, 2002.  AT 13.

at 13-17.

      (2) The Commissioner failed to properly assess the severity of Plaintiff's conditions.  Dkt.

No. 6 at 17-20.

      (3) The Commissioner failed to properly determine Plaintiff's residual functional capacity.

Dkt. No. 6 at 20-22.

      (4) There is no substantial evidence to support the Commissioner's conclusion that there is

significant work in the national or regional economies that Plaintiff could perform.  Dkt. No. 6 at

22-23.

      (5) The ALJ failed to properly evaluate Plaintiff's credibility.  Dkt. No. 6 at 23-24.

      Defendant argues that the Commissioner's determination is supported by substantial

evidence in the record, and must be affirmed.  Dkt. No. 8.

## C.      Background

      Plaintiff was thirty-five years old at the time of the most recent hearing.  AT 376.  Plaintiff

has his high school degree and completed courses in electricity and electronics.  AT 153.  Plaintiff's

past work experience consists of working as a framer, machine operator, cook/caterer, and "bus

boy."  AT 148.

      Plaintiff alleges that he became unable to work on October 10, 2003.  AT 139.  Plaintiff

claims disability due to a left shoulder injury.  AT 147.

## D.      Medical History

      On March 23, 2000, Plaintiff injured his right shoulder while working as a machine operator

at a printing company.  AT 192, 238.  Plaintiff reported that he lifted a wood pallet and subsequently

developed pain in his right shoulder.  AT 192.  Plaintiff stopped working and underwent surgery.

AT 196.

In July of 2001, Plaintiff developed symptoms related to his left shoulder.  AT 263, 341. One medical examiner noted that Plaintiff described the symptoms as "overuse."  AT 263.  It was noted that no specific injury occurred.  Id.

### 1.      Alfred Kristensen, M.D.

From August 5, 2003 to April 11, 2006, Plaintiff treated with Alfred Kristensen, M.D., an orthopedic surgeon, for bilateral shoulder discomfort, cervical pain and headaches.  AT 201-18, 233-36, 245-50, 255-59, 269-75, 284-94, 299-303, 311-13, 317-20.  Dr. Kristensen diagnosed Plaintiff as suffering from left acromioclavicular arthritis and subacromial bursitis with rotator cuff tear.  AT 208.  Dr. Kristensen treated Plaintiff using various methods, including medications, a TENS unit, and steroid injections.  See AT 202, 208, 235, 284, 294.

Dr. Kristensen also performed surgery on Plaintiff.  On January 2, 2004, Dr. Kristensen performed a left Neer acromioplasty and bursectomy with repair of the rotator cuff and excision of distal clavicle.  AT 208.  In April of 2004, Dr. Kristensen also performed a closed lysis of adhesions.  AT 257, 270.  Dr. Kristensen repeatedly opined that Plaintiff had a temporary total disability.  AT 204-06, 211-12, 214, 216, 218, 234, 236, 246, 248, 250, 256, 258, 270, 285, 288, 291.

On December 16, 2005, Dr. Kristensen completed a Medical Source Statement regarding Plaintiff's abilities.  AT 299-302.  Dr. Kristensen indicated that Plaintiff is capable of lifting and carrying a maximum of ten pounds on both occasional and frequent bases; and noted that Plaintiff's abilities to stand, walk, and sit are not affected by his impairments, but that Plaintiff experiences some discomfort when swinging his arms.  AT 299-300.  Dr. Kristensen also indicated that Plaintiff's abilities to push and/or pull are affected by his impairment and that Plaintiff has some postural and manipulative limitations.  AT 300-01.

### 2.      Physical Therapy

In the interim, Plaintiff underwent physical therapy from February 2, 2004 to March 15, 2004.  AT 219-24.  Plaintiff's tolerance of the treatment was mostly fair.  Id.

### 3.      Agency Review

The record contains an RFC assessment completed by a disability analyst on April 28, 2004. AT 225-30.  It indicated that Plaintiff has the following abilities: occasionally lift and/or carry a maximum of twenty pounds; frequently lift and/or carry a maximum of ten pounds; stand and/or walk for a total of about six hours in an eight-hour workday; and sit for a total of about six hours in an eight-hour workday.  AT 226.  It is also indicated that Plaintiff has some postural and manipulative limitations.  AT 227.

Similarly, Richard Blaber, M.D., a State agency physician, stated on April 27, 2004 that Plaintiff is capable of lifting twenty pounds occasionally and ten pounds frequently; and sitting, standing, and walking for six hours.  AT 232.  He also stated that Plaintiff is limited in his ability to perform overhead reaching.  Id.

### 4.      Arthur Peckham, Jr., M.D.

On September 13, 2004, Plaintiff saw Arthur Peckham, Jr. M.D.  AT 263-64.  During the initial visit, Plaintiff exhibited, *inter alia*, tenderness over the left AC joint.  AT 263.  Dr. Peckham diagnosed Plaintiff as suffering from status post bilateral shoulder surgeries and gave Plaintiff pain medication.  AT 264.

During a subsequent visit on October 7, 2004, Dr. Peckham opined that Plaintiff "probably could perform some sort of activities, although I would have to say that he is 100% disabled for his usual type of activities."  AT 265.

### 5.      Joseph Ortiz, M.D.

4

On September 17, 2004, Plaintiff was examined by Joseph Ortiz, an orthopedic surgeon, for purposes of Plaintiff's workers' compensation claim.  AT 237-44.  Dr. Ortiz opined that Plaintiff is temporarily totally disabled.  AT 238.  He found that Plaintiff's prognosis regarding total resolution of Plaintiff's bilateral shoulder symptomatology is guarded; and that conservative care should be carried out regarding Plaintiff's cervical spine symptoms.  Id.  Dr. Ortiz opined that Plaintiff "is going to have a permanent loss of use to both upper extremities."  Id.

On March 19, 2005, Plaintiff was reexamined by Dr. Ortiz.  AT 251-54.  Dr. Ortiz opined that in view of Plaintiff's "restrictions and symptomatology" in both his shoulders and neck, Plaintiff is temporarily totally disabled.[2]  AT 252.  He also opined that Plaintiff should avoid repetitive motions with his neck and both upper extremities and avoid any pushing or pulling with his upper extremities.  Id.  Dr. Ortiz recommended that Plaintiff continue to see his treating physician, have the availability of pain management, and continue taking pain medications.  Id.

On June 15, 2005, Plaintiff was reexamined by Dr. Ortiz.  AT 259-62, 307-10.  Dr. Ortiz opined that Plaintiff has "work capabilities with restrictions in which he should avoid repetitive motions with his neck and both upper extremities, and avoid any pushing or pulling with his upper extremities."  AT 260.  Dr. Ortiz opined that Plaintiff has a moderate to marked degree of temporary partial disability based on the New York Workers' Compensation Board Medical Guidelines.  Id.

### 6.    Steven Fish, M.D.

On March 3, 2005, Plaintiff was examined by Steven Fish, M.D. for an injury to his right elbow and fifth finger.  AT 266-67.  Dr. Fish noted that Plaintiff reported that he was involved in a physical altercation at a bar.  AT 266.  Dr. Fish diagnosed Plaintiff as suffering from olecranon bursitis, right status post injury and right fifth finger soft tissue injury.  Id.  Regarding Plaintiff's

---

[2]  Dr. Ortiz later clarified that this opinion is based on Plaintiff's job duties as of March 23, 2000.  AT 260.

elbow, Dr. Fish opined that Plaintiff should avoid leaning on his elbow, obtain an "elbow pad" and use anti-inflammatories.  AT 267.  Regarding Plaintiff's finger, Dr. Fish suggested that Plaintiff work on ranges-of-motion and soak the finger and that massage could be helpful.  Id.

### 7.    Dr. Gordon

On June 13, 2005, Plaintiff saw Dr. Gordon for pain management.  AT 276-81.  Dr. Gordon found no sign of complex regional pain syndrome and no neuropathic pain.  AT 280.  He commented, "From an interventional standpoint I have little to offer."  Id.  He suggested that Plaintiff undergo a physiatry consultation and a tertiary hospital orthpedic consultation.  Id.  He also suggested that Plaintiff use a TENS unit.  Id.

### 8.    Peter Hummer, R.P.A.

In November of 2005, Plaintiff saw Peter Hummer, R.P.A. ("PA Hummer") for treatment of, *inter alia*, allergies, back pain, and a shin injury.  AT 295-98.  PA Hummer recommended that Plaintiff undergo an x-ray of his lumbosacral spine and further evaluation.  AT 296.

### 9.    Paul S. Curtis, M.D.

On November 30, 2005, Plaintiff was examined by Paul S. Curtis, M.D. for his low back pain.  AT 304-05.  Dr. Curtis noted that x-rays of Plaintiff's back "revealed flattening of normal lumbar lordosis with essentially reversal of the lordotic curve."  AT 304.  Dr. Curtis diagnosed Plaintiff as suffering from intervertebral disc displacement lumbar without myelopathy, lumbago, thoracic spine pain, and kyphoscoliosis idiopathic.  AT 305.

On March 13, 2006, Plaintiff saw Dr. Curtis for Plaintiff's low back pain.  AT 327-28.  Dr. Curtis prescribed physical therapy and medication.  AT 327.

### 10.    Abdul Latif, M.D.

On April 25, 2005 Plaintiff saw Abdul Latif, M.D. of North Country Neurology, P.C. for an

evaluation of Plaintiff's chronic headaches.  AT 321-22.  Dr. Latif noted that Plaintiff complained of

being hit on the head during a physical altercation.  AT 321.  Dr. Latif noted that a CT scan

performed on February 11, 2005 of Plaintiff's brain and cervical spine, and an MRI of Plaintiff's

brain performed on March 10, 2005 were normal.  AT 322.  An MRI of Plaintiff's cervical spine

showed mild disc bulge at the C3-4 level.  Id.  Dr. Latif diagnosed Plaintiff as suffering from

chronic headaches with dizzy spells; likely post-traumatic syndrome; and a history of migraine

headaches.  Id.

On January 11, 2006, Plaintiff followed up with Dr. Latif for an evaluation of Plaintiff's

dizziness and chronic headaches.  AT 323-24.  Dr. Latif recommended certain measures including

medication and physical therapy.  AT 324.

On March 16, 2006, Dr. Latif conducted an EMG and nerve conduction studies on Plaintiff's

upper extremities.  AT 315-16.  The results were normal.  Id.

**11.    Michael LaPierre, P.T.**

On March 7, 2006, Michael LaPierre, P.T. stated that Plaintiff is attending his clinic for

physical therapy treatment of his cervical spine.  AT 314.  He described Plaintiff's progress as "slow

[and] consistent;" although "severe complaints of left posterior neck and left occipital/temporal

head pain persists."  Id.  Loss of cervical movements was also noted.  Id.

**II.    DISCUSSION**

**A.    Disability Standard**

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is

"unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920

to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful activity.  If he is not, the [Commissioner] next considers whether
> the claimant has a "severe impairment" which significantly limits his physical or
> mental ability to basic work activities.  If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which meets or equals the criteria of an impairment listed in Appendix 1
> of the regulations.  If the claimant has such an impairment, the [Commissioner] will
> consider him disabled without considering vocational factors such as age, education,
> and work experience; . . . .  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then determines
> whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if the

plaintiff establishes that his impairment prevents him from performing his past work, the burden

then shifts to the Commissioner to prove the final step.  Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful

activity "at any time relevant to this decision."  AT 16.  At the second step, the ALJ determined that

Plaintiff has the following severe impairment: residual shoulder symptoms status post bilateral

shoulder surgeries.  Id.  At the third step, the ALJ concluded that this impairment fails to meet or

medically equal one of the impairments listed in Appendix 1 of the regulations.  AT 17.  At the

fourth step, the ALJ concluded that Plaintiff retains the ability to perform a limited range of light work.  Id.  The ALJ concluded that Plaintiff is unable to perform any past relevant work.  AT 18.  At the fifth step, the ALJ considered the testimony of a vocational expert and concluded that Plaintiff is not disabled.  AT 19-20.

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

**C.**      **Severity**

Plaintiff argues that the ALJ erred by failing to find that his "neck condition" and chronic headaches are severe impairments.  Dkt. No. 6 at 17-20.  Defendant argues that the ALJ's finding that Plaintiff's neck pain and headaches are non-severe is supported by substantial evidence.  Dkt. No. 8 at 5-7.

Step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits physical or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe.  Id.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).

The severity analysis does no more than "screen out *de minimis* claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above the *de minimis* level, then further analysis is warranted.  Id.  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523, 416.923; Dixon,

54 F.3d at 1031.

"A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' " Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727 at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

### 1.    Neck Pain

The ALJ concluded that Plaintiff has no severe neck disorder.  AT 16.  The ALJ's finding is supported by the following substantial evidence.

First, diagnostic test results support the ALJ's finding.  As noted by the ALJ, an MRI of Plaintiff's cervical spine showed "slight" bulging at the C3-4 disc-space level.  AT 16, 282.  No other significant findings were observed.  AT 282.  Moreover, a CT scan of Plaintiff's cervical spine performed on February 11, 2005 was reportedly normal.  AT 322.

Second, examination findings support the ALJ's decision.  For instance, on November 30, 2005, Dr. Curtis, an examining physician, noted that Plaintiff's head and neck were grossly within normal limits.  AT 304.  On March 13, 2006, Dr. Curtis found that Plaintiff was neurologically intact and findings made during the musculoskeletal examination were normal.  AT 327.  Similarly, Dr. Latif noted that during an examination on April 25, 2006, Plaintiff's neck was supple and he exhibited only mild tenderness at the base of the skull.  AT 322.  Further, during an examination on June 15, 2005 by Dr. Ortiz, Plaintiff's cervical spine showed a normal active range-of-motion in flexion and extension and there was no objective evidence of any spasms of the trapezial musculature.  AT 261.

In light of the foregoing, the ALJ's finding that Plaintiff's neck pain is not severe is supported by substantial evidence.  Therefore, the matter in this regard is affirmed.

11

### 2.    Headaches

The ALJ found that Plaintiff has no severe impairment related to the head injury that Plaintiff sustained during the physical altercation in the bar.  AT 16.  For the following reasons, the ALJ's finding is supported by substantial evidence.

First, diagnostic test results support the ALJ's finding.  Dr. Latif noted that a CT scan of Plaintiff's brain performed on February 11, 2005 reportedly was normal.  AT 322.  Moreover, an MRI of Plaintiff's brain performed on March 10, 2005 was normal.  AT 283.

Second, examination findings support the ALJ's decision.  During the examination on April 25, 2005, Dr. Latif noted that Plaintiff described the pain as occurring "mostly on the left side of his head, more so at the base of the neck."  AT 321.  Dr. Latif noted that Plaintiff stated his headaches were not associated with any nausea, vomiting, photophobia, or phonophobia.  Id.  Plaintiff stated that he experienced dizziness, which was brought on by quick movements of the head.  Id.  On examination, Plaintiff's recent and distant memory was intact and his speech was fluent.  AT 322.  Plaintiff's muscle tone was normal and he had no focal motor weaknesses.  Id.  Plaintiff's sensation was normal and he had no tremors.  Id.

In light of the foregoing, the ALJ's finding that Plaintiff's headaches are not severe is supported by substantial evidence.  Therefore, the matter in this regard is affirmed.

### E.    RFC and Treating Physician

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945.  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d

370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply make conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150.  SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996).  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

The ALJ found that Plaintiff retained the RFC to perform work at the light exertional level that does not require walking for more than one hour at a time, lifting more than ten pounds, repetitive lifting, climbing of ladders or scaffolds, more than very limited overhead reaching, or repetitive motions of the neck or upper extremities.[3]  AT 17.

## 1.    Review of Record

Plaintiff argues that in determining his RFC, the ALJ "ignored much of the medical record." Dkt. No. 6 at 13.  He claims that the ALJ failed to acknowledge various test results, the "substance of many evaluations" by Dr. Kristensen, and forms of treatment.  Id.  However, an ALJ is not required to reconcile every shred of evidence.  See Jones v. Barnhart, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) (ALJ not obligated to address specifically each piece of evidence);

_____

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67,79 (N.D.N.Y. 2005) ("[F]ailure to cite specific

evidence does not indicate that it was not considered.") (citation omitted).  Moreover, it is the ALJ's

duty to determine a claimant's RFC, and not simply to "agree[]" with a physician's opinion.  See 20

C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . . the

administrative law judge . . . is responsible for assessing your residual functional capacity.").

      In any event, the ALJ reviewed the record in some detail, noting that Plaintiff received

"various treatments for shoulder pain, such as medication, physical therapy, injections, and surgery."

AT 18.  The ALJ discussed Plaintiff's medical history, including results of examinations, and

opinions, test results, and treatments.  Therefore, the ALJ committed no error in this regard.

      **2.**      **Dr. Kristensen**

      Plaintiff argues that the ALJ erred by failing to assign controlling weight to Dr. Kristensen's

opinion that Plaintiff is totally disabled.  Dkt. No. 6 at 14.  Defendant argues that the ALJ properly

assigned little weight to this opinion.  Dkt. No. 8 at 8-9.

      In her decision, the ALJ noted that several physicians, including Dr. Kristensen, opined that

Plaintiff is totally disabled.  AT 17.  The ALJ, however, assigned little weight to these statements.

Id.  The ALJ explained that the statements relate to disability for purposes of workers' compensation

benefits.  AT 17.  Indeed, workers' compensation claims are governed by standards different from

the disability standards under the Social Security Act.  See Crowe v. Comm'r of Soc. Sec., No.

6:01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (citing Gray v. Chater, 903

F.Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the

worker's prior employment and measure the ability to perform that employment rather than using the

definition of disability in the Social Security Act").

      The ALJ also noted that under the Social Security Act, the determination of disability is

reserved to the Commissioner.  AT 17.  The regulations provide that the Commissioner is

responsible for making the determination about whether a claimant meets the statutory definition of

disability.  See 20 C.F.R. §§ 404.1527(e), 416.27(e); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.

1999) ("That means that the Social Security Administration considers the data that physicians

provide but draws its own conclusions as to whether those data indicate disability").  Therefore, the

ALJ was not bound by the physicians' statements that Plaintiff is totally disabled.

      Plaintiff acknowledged that while it is "technically true" that the ultimate decision regarding

disability is reserved for the Commissioner, the ALJ should have contacted Dr. Kristensen for further

development of his opinion "if Dr. Kristensen's opinion was insufficiently supported."  Dkt. No. 6 at

16.  However, Plaintiff's counsel himself claims that Dr. Kristensen's opinion is well-supported,

pointing out eleven pieces of supporting evidence.  Dkt. No. 6 at 14-15.  Second, the ALJ made no

finding that Dr. Kristensen's opinion was insufficiently supported.  Moreover, as noted, the

Regulations provide that the ALJ must draw their own conclusion as to a claimant's disability.  See

20 C.F.R. § 404.1546(c).  Therefore, this claim is unavailing.

      In any event, the ALJ reviewed Dr. Kristensen's opinion as set forth in the Medical Source

Statement.  AT 17.  The ALJ assigned greater weight to this opinion than to the other medical

opinions in the record because Dr. Kristensen is Plaintiff's treating orthopedic specialist.  Id.

Therefore, the ALJ supported the RFC finding with Dr. Kristensen's opinion as set forth in the

Medical Source Statement.

      **3.**      **Drs. Ortiz and Peckham**

      Plaintiff argues that the ALJ ignored Dr. Ortiz's finding that Plaintiff would have a

permanent loss of use of both upper extremities, and that Dr. Peckham agreed with this opinion.

Dkt. No. 6 at 13.  Plaintiff also argues that the ALJ ignored other findings made by Dr. Ortiz.  Id.

15

Defendant argues that the ALJ reviewed Dr. Ortiz's opinion, agreed that Plaintiff has work limitations as established by Dr. Ortiz, and incorporated the limitations into the RFC determination. Dkt. No. 8 at 9.  Defendant also argues that the ALJ reviewed Dr. Peckham's findings and that these findings support the RFC.  Id. at 11.

First, to the extent that Plaintiff argues that the ALJ was bound by Dr. Ortiz's finding that Plaintiff has a permanent use of both upper extremities, with which Dr. Peckham agreed, the ALJ was not bound to assign controlling weight to these opinions because Drs. Ortiz and Peckham are not treating physicians.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Moreover, Dr. Ortiz rendered this opinion in the context of workers' compensation, which, as noted, is governed by standards different from the disability standards under the Social Security Act.  See Crowe, 2004 WL 1689758, at *3 (citation omitted).

Second, regarding Dr. Ortiz, the ALJ specifically discussed Dr. Ortiz's findings that Plaintiff should avoid repetitive movements with his neck and upper extremities, and should avoid any pushing or pulling with his upper extremities.  AT 17.  The ALJ noted that Dr. Ortiz issued the same restrictions in June of 2005.  Id.  Dr. Ortiz's opinion supports the RFC finding in that it requires, inter alia, no repetitive motions of the neck or upper extremities and no more than limited overhead reaching, and that Plaintiff should avoid repetitive lifting.

Third, regarding Dr. Peckham, the ALJ reviewed several findings made by this source.  AT 18.  For instance, the ALJ cited to Dr. Peckham's September 13, 2004 report in which Dr. Peckham described Plaintiff as appearing healthy, well-muscled, and in no distress.  AT 18, 263.  The ALJ also cited to the October 7, 2004 report in which Dr. Peckham opined that Plaintiff is unable to perform his "usual" activities but is able to "perform some sort of activities."  AT 265.  Therefore, Dr. Peckham's findings also support the RFC determination.

16

Fourth, the Court notes that the RFC finding is further supported by the opinion of Dr. Blaber, the State agency review physician, who opined that Plaintiff is capable of lifting twenty pounds occasionally and ten pounds frequently; and sitting, standing, and walking for six hours.  AT 232.  He also stated that Plaintiff is limited in his ability to perform overhead reaching.  Id.  State agency physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(f)(2)(I); 416.927(f)(2)(i); SSR 96-6p, 1996 WL 362203, at *2 (S.S.A.).

In sum, the ALJ properly assigned little weight to the opinions of total disability and supported the RFC finding with substantial evidence, which included the opinions of Drs. Kristensen, Ortiz, Peckham, and Blaber.  Therefore, the matter in this regard is affirmed.

**D.     Credibility**

Plaintiff argues that the ALJ failed to address the symptom-related factors set forth in the regulations.  Dkt. No. 6 at 24.  He also argues that the ALJ failed to consider Plaintiff's good work history and points out that none of the treating and examining physicians doubted Plaintiff's allegations.  Id. at 23-24.  Defendant argues that the ALJ properly evaluated Plaintiff's credibility.  Dkt. No. 8 at 13-14.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v.

17

Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

In the decision, the ALJ found Plaintiff partially credible. AT 18. In making this determination, the ALJ noted that Plaintiff does laundry, dusts, vacuums, and washes dishes, and that Plaintiff stated that he is capable of driving a car. Id. The ALJ also reviewed Plaintiff's symptoms, which included shoulders that are "constantly painful," a "burning pain" in his back, and that Plaintiff's legs "give out at times." Id. Also, the ALJ noted that Plaintiff complained of a limited range of motion of the neck, daily headaches, dizzy spells, and disturbed vision. Id. The ALJ then reviewed Plaintiff's treatments, which included medication, physical therapy, injections, and surgery. Id. In addition, the ALJ pointed out that while Plaintiff alleged an inability to use his left arm,

18

Plaintiff was described as "well muscled" during an examination by Dr. Peckham.  Id.

Further, the ALJ pointed out that the record indicates that Plaintiff is not interested in vocational retraining.  AT 18.  Indeed, Dr. Curtis noted on November 30, 2005 that Plaintiff "has been through VESID and really is not interested in retraining at this time as he has multiple other problems as well."  AT 305.

Lastly, despite Plaintiff's argument that no treating or examining physician questioned his credibility, it is the ALJ's job to assess a claimant's credibility in accordance with the regulations. See 20 C.F.R. § 404.1529.  Indeed, "[i]t is the function of the Secretary . . . to appraise the credibility of witnesses, including the claimant."  Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1982) (emphasis added)).

Further, contrary to Plaintiff's assertion that the ALJ ignored Plaintiff's work history and his return to work following a closed period of disability, the ALJ specifically noted Plaintiff's return to work.  AT 13.

Accordingly, the ALJ's finding regarding Plaintiff's credibility is supported by substantial evidence.  Therefore, the matter in this regard in affirmed.

## F.    Step Five Determination

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a).  The ALJ may apply the

Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE").  See Heckler v.

Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt.

404, subpt. P, App. 2.  If a claimant's nonexertional impairments "significantly limit the range of

work permitted by his exertional limitations" the application of the grids is inappropriate.  Bapp v.

Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

      In this case, the ALJ stated that he elicited the testimony of a VE in order to determine the

extent to which Plaintiff's limitations eroded the unskilled light occupational base.  AT 19.  The VE

was asked to consider an individual of Plaintiff's age, education, work experience, and RFC.  AT

186.  The VE responded that the individual was capable of performing the following positions:

Information Clerk (1,046,590 national positions and 1,270 regional positions); Telephone Solicitor

(437,510 national positions and 150 regional positions); and Order Clerk (338, 430 national positions

and 160 regional positions).  AT 187.  Based on this information, the ALJ concluded that Plaintiff is

capable of making a successful adjustment to other work that exists in significant numbers in the

national economy.  AT 19.

      Plaintiff first argues that the positions identified by the VE require at least occasional

reaching and handling and/or frequent reaching.  Dkt. No. 6 at 23.  Plaintiff therefore argues that the

VE "failed to identify any work that could be performed by an individual with the limitations

suffered by [P]laintiff (as outlined by the ALJ)."  Id.

      However, as argued by Defendant, the RFC did not preclude "occasional reaching" or

"frequent reaching."  See Dkt. No. 8 at 16.  Instead, the VE was asked to consider an individual who

was able to perform "very limited *overhead* reaching, or repetitive motions of the neck or upper

extremities."  AT 17 (emphasis added).  The VE considered these specific limitations and identified

the three aforementioned jobs.  Therefore, Plaintiff's argument is unavailing.

20

Plaintiff next argues that the ALJ erred by stating in her decision that the VE's testimony "was not rebutted by any subsequent submissions or testimony." Dkt. No. 6 at 23. Plaintiff points out that upon questioning by Plaintiff's then-counsel, the VE stated that no jobs would be available if the hypothetical individual "suffered the limitations outlined by Dr. Kristensen in Exhibit 16F, and if he required daytime rest periods even twice per week." Id.; see AT 367-69.

However, there must be "'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'" Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). Plaintiff points to no evidence to support the alleged need for naps. Therefore, the Court is unable to find that the ALJ erred in this regard.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:      September 30, 2008
            Albany, New York

Lawrence E. Kahn
U.S. District Judge